In the Matter of Timothy J. RASSI and Virginia Rassi.

**JEFFERSON TRUST AND SAVINGS BANK OF PEORIA, Appellant,**

v.

**Timothy J. RASSI and Virginia Rassi, Appellees.**

No. 82–1247.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1982.

Decided Feb. 18, 1983.

Chris Traicoff, Sutkowski & Washkuhn Assoc., Peoria, Ill., for appellant.

Gray T. Rafool, Peoria, Ill., for appellees.

Before ESCHBACH, Circuit Judge, SWYGERT, Senior Circuit Judge, and CAMPBELL, Senior District Judge.*

ESCHBACH, Circuit Judge.

Jefferson Trust and Savings Bank of Peoria ("Bank") appeals from the district court's affirmance of the bankruptcy court's dismissal of the Bank's petition for involuntary bankruptcy filed against the appellees, Timothy and Virginia Rassi, under § 303 of the Bankruptcy Code, 11 U.S.C. § 303. For the reasons below, we reverse and remand.

## I

On July 28, 1981, the appellant filed a petition for involuntary bankruptcy against the Rassis pursuant to 11 U.S.C. § 303.[1]

---

\* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation.

1. Section 303 provides in pertinent part:

(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;

(3) if such person is a partnership—

(A) by fewer than all of the general partners in such partnership; or

(B) if relief has been ordered under this title with respect to all of the general partners in such partnership, by a general partner in such partnership, the trustee of such a general partner, or a holder of a claim against such partnership; or

(4) by a foreign representative of the estate in a foreign proceeding concerning such person.

(c) After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.

The Rassis filed a Motion to Dismiss, asserting, inter alia, that they had twelve or more creditors, so that at least three creditors must join in any petition for involuntary bankruptcy. On August 25, 1981, the Rassis filed a list of creditors pursuant to Rules Bankr.Proc.Rule 104(e) in support of their Motion to Dismiss.[2] This listed the names and addresses of the creditors, the nature and the amount of each claim. On September 1, 1981, both parties appeared at a hearing on the Motion to Dismiss. The Bank requested a continuance and an opportunity to engage in discovery. Additionally, the Bank suggested that small, recurring claims be excluded from the list of creditors. The court denied discovery, and continued the case for two weeks, stating that the petition would be dismissed if the Bank did not succeed in convincing at least two other creditors to join in the petition. The court also stated that whether some of the debts were small, recurring ones made no difference under the law. On September 15, 1981, the Bank moved that the September 1, 1981 order be vacated and that the Bank be allowed to examine the Rassis and their records in order to determine whether any of the creditors on the list provided by the Rassis should be excluded under 11 U.S.C. § 303(b)(2). This motion was denied and the petition was dismissed on September 16, 1981.

The Bank appealed to the district court, which affirmed the dismissal. The Bank then appealed to this court.

## II

The Bank presents two issues on appeal. First it contends that it is entitled to discovery and a hearing to determine whether the list of creditors presented by the Rassis was accurate and whether any creditors should be excluded in determining the number of creditors under 11 U.S.C. § 303(b)(2). The Bank next contends that, in addition to those creditors specifically excluded by § 303(b)(2), holders of small, recurring claims should also be excluded.

The Rassis urge affirmance of the dismissal and request remand to pursue a claim for costs, attorney's fees and damages.

## III

### A. The Necessity of Discovery and a Hearing

■ One or two creditors can successfully petition for involuntary bankruptcy under § 303 of the Bankruptcy Code only if the alleged debtor has fewer than twelve creditors. Certain creditors are excluded from this count because they would be unlikely to join in a petition by reason of their relationship to the alleged debtor, e.g. employees, or because their interests would be disserved by a successful petition, e.g. creditors who have received voidable transfers. See 11 U.S.C. § 303(b)(2). If one or two creditors file a petition, the alleged debtor may allege in an answer that there exist twelve or more creditors, filing a list to support this assertion. Rules Bankr.Proc. Rule 104. The list must include all creditors, and need not indicate which of these creditors are excluded from the count under 11 U.S.C. § 303. Id. The Rassis contend that the list itself, in the form required by Rule 104, is sufficient protection for a lone petitioner because this list is a tool for contacting other creditors who may join the petition. According to the Rassis, if the petitioner is unsuccessful in convincing other creditors to join, the petition must be dismissed.

**2.** Rule 104(e) provides:

(e) Joinder of Petitioners After Filing. Creditors other than the original petitioners may join in an involuntary petition at any time before its dismissal. If the answer to an involuntary petition filed by one or 2 creditors avers the existence of 12 or more creditors, the alleged bankrupt shall file with the answer a list of all his creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as counted under section 95(e) of this title [303(b) of the present Code], the court shall thereupon afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

We cannot agree. The rationale for excluding certain creditors from the count is that they would be unlikely to join a petition. *Winkleman v. Ogami*, 123 F.2d 78, 80 (9th Cir.1941); *see also* Note, *Counting Creditors and Petitioning Creditors in Bankruptcy*, 48 Iowa L.Rev. 833, 837–38 (1963). To say that the list itself is sufficient safeguard for one or two petitioners because through it they can contact potential joiners would render the exclusions meaningless. Regardless of the number of creditors on the list, a petitioner is unlikely to succeed in finding joiners if the list is sufficiently loaded with creditors from the excluded categories. The list and the opportunity to persuade others to join cannot be the sole recourse for one or two petitioners. Our research discloses numerous cases in which the court or referee has received evidence on the issue of which creditors on the list provided by the alleged debtor should be excluded for the purposes of the § 303 count. *E.g. In re Okamoto*, 491 F.2d 496 (9th Cir.1974); *In re Kirk*, 198 F.Supp. 771 (W.D.Pa.1961); *In re Murray*, 14 F.Supp. 146 (W.D.N.Y.1936); *In re Branche*, 275 F. 555 (N.D.N.Y.1921); *In re Blount*, 142 F. 263 (E.D.Ark.1906); *In re Brown*, 111 F. 979 (E.D.Mo.1901); *In re Skye Marketing Corp.*, 11 B.R. 891 (Bkrtcy.E.D.N.Y.1981).[3] The Rassis, the courts below, and our research reveal no cases in which a petition was dismissed on the basis of the alleged debtor's list alone, except where the petitioner was not diligent in seeking discovery.[4] "[T]here can be no doubt that it is the duty of the court to ascertain the facts connected with alleged indebtedness before it can be allowed to defeat the one large creditor in an effort to resort to bankruptcy proceedings. . . ." *W.A. Gage & Co. v. Bell*, 124 F. 371, 378 (W.D.Tenn.1903).

At oral argument, counsel for the Rassis asserted that Rules Bankr.Proc.Rule 205 gave the Bank a means of determining which creditors should have been excluded, but that the Bank failed to avail itself of this provision.[5] While not referring to Rule 205 specifically by number, the Bank did request, by written motion dated September 15, 1981, to "be afforded the opportunity of conducting an examination of the Debtors and their books . . ." to determine the accuracy of the list and whether any creditors should be excluded from the § 303(b)(2) count. This motion was summarily denied. Short of referring to Rule 205 by numerical designation, there was little more the Bank could have done to avail itself of this provision.

The bankruptcy court not only summarily denied the Bank's September 15, 1981 mo-

---

**3.** Cases decided under § 303(b)'s statutory predecessor, § 59(e) of the Bankruptcy Act of 1898, 11 U.S.C. § 95(e) (repealed 1979), are also considered in this court's analysis.

**4.** In one case, a court refused to allow interrogatories designed to determine whether any listed creditors should be excluded. The decision was affirmed because the two petitioners had neither tried to get other creditors to join nor tried to determine whether any should be excluded during the month and a half before the hearing at which the interrogatories were submitted. *Hydromechaniki, S.A. v. MacDonald Construction Co.*, 511 F.2d 475, 476–77 (8th Cir.1975). That decision was based on the petitioners' lack of diligence, not on any impropriety of discovery. There is no indication that the Bank was less than diligent in trying to get other creditors to join. At the September 1, 1981 hearing, one week after the Rassis had filed their list of creditors, the court suggested that the Bank contact other creditors to join the petition. The Bank's attorney responded: "It's a very interesting factual situation. No one else wants to join us. They are friends of Mr. Rassi or they are being kept current by Mr. Rassi only to prevent the bankruptcy." This indicates that, by the September 1 hearing, the Bank had attempted to convince other creditors to join. The Bank also sought discovery, by oral request at the September 1, 1981 hearing and by written motion on September 15, 1981. The court frustrated these attempts at discovery by perfunctory denials. Thus we find no evidence that the Bank was less than diligent in contacting creditors and in seeking discovery during the three weeks between the filing of the list and the dismissal of the petition.

**5.** Rule 205 provides in pertinent part:

(a) Examination on Application. Upon application of any party in interest, the court may order the examination of any person. The application shall be in writing unless made during a hearing or examination or unless a local rule otherwise provides.

tion for an examination of the Rassis, but also cryptically and perfunctorily denied the Bank all discovery at the September 1, 1981 hearing. The Bank's attorney attempted at several points to explain to the court the purpose of the requested discovery and hearing, but each attempt was met with summary denial.[6]

■ While a trial court has wide discretion to determine the manner and course of discovery, *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 902 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982), this court will reverse a trial court's limitation when it is improvident and prejudices a party's substantial rights, *Goldman v. Checker Taxi Co.,* 325 F.2d 853, 856 (7th Cir.1963).[7] We hold that the bankruptcy court abused its discretion in denying the Bank all opportunity to determine which creditors should be excluded from the § 303(b)(2) count. We remand this case to afford the Bank an opportunity to conduct appropriate discovery. The bankruptcy court, in its discretion, may decide whether a Rule 205 examination and an evidentiary hearing are also necessary to resolve this issue.[8]

### B.   *The Exclusion of Small, Recurring Claims*

■ Section 303 of the Bankruptcy Code excludes certain creditors from the determination of whether an alleged debtor has twelve or more creditors. Although Congress made no provision for the exclusion of holders of small, recurring claims, i.e. those incurred generally for necessities and usually paid monthly, the Bank urges that these claims be excluded so that the goals and protections of the Bankruptcy Code are not frustrated. There are good policy reasons for excluding small, recurring claims. Holders of such claims would be unlikely to join in an involuntary petition because the nature of their transactions with the debtor sufficiently secures payment. If the debtor fails to pay his bill for one month, the creditor simply refuses to deal with him the

6. The transcript reads, in pertinent part:
   THE COURT: I'll give you two weeks to get at least two additional unsecured creditors.
   MR. RAFOOL [the Rassis' attorney]: Would this then be dismissed if he does not automatically—
   MR. TRAICOFF [the Bank's attorney]: Your Honor, may we engage some discovery, because as you know—
   THE COURT: No. That's not your function. You filed this petition, you should be prepared. You've had time from this list to get other creditors.
   . . . .
   THE COURT: You've got two more weeks.
   MR. TRAICOFF: Thank you, your Honor. At that time, your Honor, what are we having?
   MR. RAFOOL: Well, then my motion would be—I assume I will have time to file an answer.
   MR. TRAICOFF: I'm saying if we do not find two more.
   THE COURT: I'm going to dismiss—
   MR. TRAICOFF: What about determining as to preferences which are not counted toward the 10? [sic]
   THE COURT: I'm not going to determine anything if this case is dismissed.
   MR. TRAICOFF: At what point do I get to establish that preferences were made?
   THE COURT: After the involuntary petition is allowed, then you get all kinds of time.

   MR. TRAICOFF: Excuse me, Your Honor, but under Section 3030 [sic] in determining whether there are 12 or more creditors, the creditors who may have obtained preferential transfers under those are not included, and I think there has to be a hearing on that point.
   THE COURT: I'm sorry, sir. You're not prepared, and you've got two weeks to get two more creditors.
   MR. TRAICOFF: Thank you.

7. Rules Bankr.Proc.Rules 121 and 726 make Fed.R.Civ.P. 26, General Provisions Governing Discovery, applicable to all adversary proceedings and all proceedings relating to a contested petition.

8. We do not imply that any timely request for a Rule 205 examination or other discovery must be granted. We hold only that, in the circumstances presented in this case, the bankruptcy court abused its discretion in denying the Bank *all* opportunity to determine whether any listed creditors should be excluded. We note that in this case, the Rassis listed over forty creditors. While the list itself is not sufficient to establish with certainty that there are over eleven non-excluded creditors, it may not require extensive discovery or an evidentiary hearing to so establish.

   We do not reach the Bank's claim that the Bankruptcy Code and due process require an evidentiary hearing in all cases.

next. The Bank alleges that the Rassis owe it in excess of $450,000.00. It would make little sense for this petitioner to be blocked from relief because the Rassis owe $10.00 to a doctor and $9.93 for magazines. This reasoning has convinced some courts to exclude claims which appear *de minimus*. *E.g. Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376, 1378–79 (5th Cir.1971); *Security Bank & Trust v. Tarlton*, 294 F. 698, 700–01 (W.D.Tenn.1923); *In re Branche*, 275 F. 555, 556–58 (N.D.N.Y.1921); *In re Burg*, 245 F. 173, 174–75 (N.D.Tex. 1917); *In re Blount*, 142 F. 263, 266–69 (E.D.Ark.1906); *In re Blaine Richards & Co.*, 10 B.R. 424, 429–31 (Bkrtcy.E.D.N.Y. 1981).

However, regardless of how wise and salutary exclusion of small, recurring claims might be, Congress has not specifically authorized exclusion, and in the absence of any indication that Congress intended this exclusion, we have no authority to engraft it onto those that Congress expressly provided. We hold that bona fide small, recurring claims must be included in the § 303(b)(2) count.[9] *See In re Okamoto*, 491 F.2d 496, 497–98 (9th Cir.1974); *Theis v. Luther*, 151 F.2d 397, 398 (8th Cir.1945), *cert. denied*, 327 U.S. 781, 66 S.Ct. 681, 90 L.Ed. 1009 (1946); *Grigsby-Grunow Co. v. Hieb Radio Supply Co.*, 71 F.2d 113, 114–15 (8th Cir.1934); *In re Colorado Lime Co.*, 298 F.Supp. 1053, 1055–56 (D.Colo.1969); *In re Kirk*, 198 F.Supp. 771 (S.D.Pa.1961); *In re Murray*, 14 F.Supp. 146, 147 (W.D.N.Y. 1936); *In re Hall*, 27 F.2d 999, 1000 (W.D. Pa.1928); *In re Alden*, 2 F.2d 61, 62 (D.Mass.1924); *In re Brown*, 111 F. 979, 980 (C.C.E.D.Mo.1901).

### C. *Costs, Attorney's Fees and Damages*

The Rassis may pursue their claim for costs, attorney's fees and damages on remand if, after discovery and consideration of all relevant circumstances, such a claim appears appropriate.

---

**9.** This court would face a different issue if the alleged debtor had incurred or maintained small, recurring debts as part of a scheme to avoid the letter and spirit of the bankruptcy laws. Such a scheme, in fact, was the primary concern in two of the cases which excluded small, recurring debts. *See In re Branche*, 275 F. 555, 557–58 (N.D.N.Y.1921); *In re Blount*, 142 F. 263, 266–69 (E.D.Ark.1906). There is no indication, at this point, that any of the Rassis' debts were incurred or maintained as part of such a scheme.

---

## IV

The decision of the district court is reversed. The case is remanded to the district court with instructions to remand to the bankruptcy court for the purpose of affording the Bank an appropriate opportunity to determine whether a sufficient number of creditors listed by the Rassis should be excluded from the § 303(b)(2) count to enable it to proceed as a sole petitioner.